# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No: 1:20-CR-230 |
| | : | |
| KOREY KASCHIEF CORNISH, | : | The Hon. Rossie D. Alston, Jr. |
| | : | |
| Defendant. | : | |

## DEFENDANT'S POSITION WITH RESPECT TO SENTENCING

COMES NOW the defendant, Korey Cornish, by and through counsel, and provides this Court with his position regarding his advisory sentencing guidelines range and the sentencing factors espoused in 18 U.S.C. § 3553(a). The Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005) and its progeny require district courts to consider all the factors contained in § 3553(a) when calculating a criminal defendant's ultimate sentence. Under § 3553(a), courts must consider the several delineated factors in addition to the United States Sentencing Guidelines. This motion presents the defendant's position on sentencing as it relates to the Court's obligation to impose a sentence "sufficient, but not greater than necessary to comply" with the factors enunciated in 18 U.S.C. § 3553(a). In the instant case, because Mr. Cornish is subject to a mandatory minimum sentence, he has no choice but to ask this Court to impose the minimum sentence of ten years, although it is significantly higher than his sentencing guideline range.

## FACTUAL BACKGROUND

Mr. Cornish was arrested in the instant case on July 22, 2020. The next day, on July 23, 2020, the United States Attorney for the Eastern District of Virginia filed a criminal complaint

1

charging him with one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine. On August 14, 2020, this Court granted Mr. Cornish's motion for bond. Four days later, on August 18, 2020, Mr. Cornish was released from custody on personal recognizance with conditions. Since that time, Mr. Cornish has fully complied with all conditions of his release imposed by this Court. *See* PSR ¶ 12.

On September 24, 2020, Mr. Cornish was indicted on one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. 846, 841(a)(1). He appeared in person before this Court and pleaded guilty to the aforementioned indictment on December 9, 2020. The Court accepted the plea and directed that a pre-sentence investigation and report be completed. The sentencing hearing is scheduled for March 24, 2021.

**ARGUMENT**

**I) ADVISORY SENTENCING RANGE**

Mr. Cornish agrees that the PSR writer correctly calculated his guidelines. His total offense level is 27 and his criminal history category is three.[1] Ordinarily, this would correspond to an advisory sentencing range of 87-108 months. However, because he is subject to a ten year mandatory minimum pursuant to 21 U.S.C. 841 (b)(1)(A)(ii), his guidelines are adjusted to 120 months to comport with the statutory mandatory minimum. Because Mr. Cornish is ineligible for the safety valve, and as reflected in the plea agreement between the parties, both the Government and Mr. Cornish respectfully request this Court sentence Mr. Cornish to the mandatory minimum sentence provided for by law and recommended by the guidelines.

---

[1] While it has no impact on the sentencing guidelines in this case, it is worth noting that but for a ten year old driving while impaired (first offense) charge that was ultimately dismissed, Mr. Cornish would fall into criminal history category II. Accordingly, counsel submits that criminal history category II is a more accurate indicator of Mr. Cornish's criminal history.

## II) 3553(A) FACTORS

### NATURE AND CIRCUMSTANCES OF THE OFFENSE

The instant offense stems from a reverse sting operation where the Government, through its confidential cooperating source (CS-1), purported to be a drug trafficker offering large quantities of cocaine for sale. The target of the sting operation was Kinnard Turner, who came to the attention of authorities due to his prior drug dealing activities. At the direction of law enforcement, CS-1 contacted Turner and over the course of several weeks Turner and CS-1 arranged for Turner to to purchase several kilograms of cocaine from CS-1. Eventually they worked out an agreement whereby Turner would purchase 10 kilograms of cocaine from CS-1 for $325,000. Turner and CS-1 also discussed the possibility of a subsequent multi-kilogram deal, provided the first deal went smoothly. In a series of communications with CS-1 leading up to the reverse sting deal, Turner stated that he could cover the payment for the initial 10 kilogram deal. (*See* affidavit p. 5 "I'm gonna bring you my 10 cash up front … all I can bring you is my cash"). Turner further indicated that he had lined up a number of other individuals and acquaintances in the Baltimore area who were interested in purchasing cocaine, provided Turner's first deal with CS-1 went smoothly. Turner's plan was to purchase 10 kilograms of cocaine from CS-1 and to then bring the cocaine back to Baltimore where he would sell it to the individuals he had recruited. With the cash profits he received from those sales, Turner planned to return to CS-1 and purchase more cocaine. Ultimately, Turner was only able to come up with enough cash to purchase 5 kilograms of cocaine. Turner enlisted his friend, Mr. Cornish, to assist him with effectuating the initial five kilogram deal. Mr. Cornish contributed a portion of

the money that Turner used to pay CS-1. He also accompanied Turner from Baltimore to Arlington and he rented a room at the same hotel where the intended deal was to take place. These actions were all taken to help facilitate the drug sale on July 22, 2020. However, Mr. Cornish was not involved in any of the additional future deals that Mr. Turner planned to engage in with others.

No drugs were actually released into the community as a result of this reverse sting operation. No violence of any kind was involved and Mr. Cornish did not use or possess any firearms or weapons.

## HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Korey Cornish was born on the west side of Baltimore's inner city during the height of the crack cocaine epidemic. He was raised in a household with his great-grandmother, his mother, and his mother's boyfriend. Although his basic necessities were mostly met, his family struggled. For the first 24 years of his life, Korey's mother was addicted to drugs. Her live-in boyfriend used drugs as well. Consequently, at a young age Korey learned to work hard so that he could provide for himself. He worked at a retirement home throughout his high school years. By the age of 19, he had already obtained his commercial driver's license ("CDL") and was making more money than either of his parents. Korey's childhood friend, Remington Ray, writes in his letter to the Court:

> [Korey] got his first job at party city when he was only 14 and worked almost every day, missing high school parties to go make money. He got a CDL license when he was just 18 and was delivering liquor to bars he couldn't even enter during normal business hours.

His stepbrother, Julius Gingles writes: "hard work came natural to [Korey]. He had no shame in cleaning office buildings with his father while other kids were going to school dances and chasing girls." Another childhood friend, Monique Alexander, writes: "[Korey's] mother's struggles did not allow him a home to go back to [after he graduated high school]. He had to maintain an apartment and car at 19." The consensus among the many letters submitted on Korey's behalf, is that he is — and has always been — a driven, hardworking and self-motivated individual. The letters from those who know him best also consistently describe Korey as an intelligent young man who always has a smile on his face, a kind and compassionate person, a reliable and dependable friend, and a devoted dad who was determined to provide for his family in the ways that his own parents were unable to provide for him. Unfortunately the pressure he put on himself to achieve those goals lead him, at times, to suffer from symptoms of depression; to turn to illegal substances as a coping mechanism; and to make some poor decisions.

Korey has one prior felony conviction. Although he could easily have used that as an excuse to give up, he instead used it as an avenue to serve others in his community. After his conviction he applied for and was given a job as an Outreach Manager at Contemporary Family Services. In that capacity, he spoke to and helped to identify at-risk grade school children inside Baltimore City schools with behavioral issues and he helped to sign them up for services. PSR ¶ 83. Having grown up in the inner city and attended school in the west Baltimore County public school system himself, Korey was uniquely qualified for the position. Korey thrived in the job and he remained there for nearly two years. He would have stayed longer but the company eventually closed due to financial hardship, leaving Korey jobless. After that, Korey attempted

5

to go into business for himself.  Drawing on his former CDL experience, he started a trucking company.  However, despite his best efforts, after several months he was still unable to generate a profit from the trucking business.  Recognizing that his most fulfilling employment endeavors were those where he helped others, Korey made the decision to pursue his dream of opening his own assisted care facility.  Having worked at a retirement home for four years in high school, this was an area where Korey had relevant work experience — both professionally and personally.  In 2011, Korey's great-grandmother, the woman who helped to raise him, passed away.  During the last year of her life, Korey cared for her.  Korey named the assisted living facility Helen's House in memory of his great-grandmother, Helen Kelly.  Korey was in the process of opening up the small living facility last spring when COVID hit.  He had already leased the space (a multi-bedroom facility in Baltimore) and fully furnished it.  He had obtained all of the necessary fire code inspections and was in the process of pursuing the necessary licenses when his progress ground to a halt due to COVID and his dreams were crushed.  The stress and anxiety from his mounting financial pressures grew more pronounced with each passing day.  He sank into a depression and began drinking and using drugs as a means of coping with the stress.  Shortly thereafter, his friend Turner, presented him with an opportunity: "a one-time deal to earn enough money to then fund legitimate businesses came out of nowhere and seemed to be the answer to my most pressing problem."  *See* Acceptance of Responsibility PSR ¶ 35.  Instead, it proved to be just the opposite.  Korey now faces a mandatory minimum sentence of 120 months in prison.

## THE NEED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, PROMOTE RESPECT FOR THE LAW AND TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE

Mr. Cornish's conduct was admittedly serious. He attempted, unsuccessfully, to help facilitate his friend's purchase of 5 kilograms of cocaine. As noted, however, he did not use or possess any firearms or weapons in this endeavor, nor does he have a history of doing so. His crime did not involve any violence or threatened violence. Moreover, he has accepted responsibility and demonstrated sincere remorse for his conduct, as evidenced in his candid statement to the probation officer:

> The series of events that led me to reoffend is not black and white. The broken oath to myself and the disappointment of not just my family and friends who believed in me, but co-workers and professionals who know my story is something I contend with daily. The decision to act unlawfully was fueled by a few factors; mounting financial pressure in the wake of losing a job I loved through no fault of my own, 2 failed business attempts, emotional distress and to put it plainly my arrogance all lead me down this road. Acting in my own self-interest when the opportunity of a one-time deal to earn enough money to then fund legitimate businesses came out of nowhere and seemed to be the answer to my most pressing problem. … No one is more disappointed than me for making what some would say is the easy choice in a hard situation. The murder of my grandmother earlier in the year (2020) taught me a lot about living with regret and disappointment and she would say if you know better, do better. I can say that this experience has made me face some demons (old & new), I am a better man, father, and friend because of this experience. This was not the pot at the end of the rainbow I was looking for, [but] my integrity and determination is all I will need to succeed in my future endeavors.

A 120 month sentence will serve as an undeniable reflection of the severity of the offense.

## THE NEED TO PROTECT THE PUBLIC FROM FURTHER CRIMES

Mr. Cornish is not simply determined to make significant changes in his life; for the past seven months he has been implementing those changes. His substance abuse is arguably his greatest risk factor for recidivism. Recognizing this, he has taken proactive measures to address it. Since his release, he has been an active participant in bi-weekly substance abuse treatment

7

sessions and he has consistently tested negative during his participation in the random urine analysis program. *See* PSR 76-77. He has also expressed a desire to participate in the RDAP program at BOP. Continued outpatient treatment upon his release will also help to mitigate this risk.

Mr. Cornish is 34 years old. Recidivism rates decline relatively consistently as age increases. *Id.* He graduated high school and attended some college. Those with higher education have lower recidivism rates. *Id.* He also has a strong work ethic and has maintained regular employment with the exception of the period of time immediately preceding his arrest, during which his business ventures were struggling to make a profit (trucking business) or failing to get off of the ground due to COVID (assisted living facility). *See* PSR ¶ 81-85.

Finally, Mr. Cornish has a strong network of support within his family and community, as evidenced by the numerous letters written on his behalf. In sum, Mr. Cornish's age, education, strong work ethic, strong support network and his ongoing participation in substance abuse treatment are all indicators that a sentence of 120 months is sufficient but no greater than necessary to assist with the goal of community safety.

## CONCLUSION

WHEREFORE based on the foregoing reasons and any others that may appear to the Court, Mr. Cornish respectfully requests that this Court impose a sentence no greater than 120 months.

> Respectfully submitted,
> KOREY CORNISH
> By Counsel

_____/s/_____
Joni C. Robin
Virginia Bar No. 44502
Attorney for Korey Cornish
Law Office of Joni C. Robin, PLLC
114 North Alfred Street
Alexandria, Virginia 22314
Ph: 703-349-1111
Fax: 571-269-6851
joni@jonirobinlaw.com

## CERTIFICATE OF SERVICE

      I hereby certify that on this 17th day of March, 2021, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record in this matter. I further certify on March 17, 2021, I emailed a copy of the foregoing to the United States Probation Officer assigned to this matter.

                                           _____/s/_____
                                              Joni C. Robin